## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Nammoun K.,

      Petitioner,

v.

Markwayne Mullin, *Secretary, Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement (ICE)*; and David Easterwood, *Acting Director of St. Paul Field Office Immigration and Customs Enforcement*,

      Respondents.

No. 26-cv-2251 (KMM/SGE)

**ORDER**

---

Petitioner Nammoun K. (hereafter "Petitioner" or "Mr. K") is currently detained by the United States immigration authorities pending deportation. He asks the Court to declare his detention unlawful and issue a writ of habeas corpus ordering the Respondents to immediately release him from custody. For the reasons stated below, Mr. K's petition is denied.

### BACKGROUND

Mr. K is a stateless refugee of Laotian heritage, but he has never been to Laos. (Dkt. 1 ¶ 1.) He was born in a Thai refugee camp where he lived his entire life before coming to the United States in 1988 at nine years old. (*Id.* ¶ 1.) In 1989, Mr. K became a lawful permanent resident, retroactive to his date of entry. (*Id.* ¶ 2; Dkt. 6 ¶ 5.) He was living in Minnesota when federal immigration officers took him into custody. (Dkt. 1 ¶ 15.)

1

Mr. K has a lengthy criminal history that has affected his right to stay in the United States as a lawful permanent resident. Most relevant here, on July 20, 2008, Mr. K was convicted of two counts of possessing controlled substances. (Dkt. 6-1 at 1.) The Department of Homeland Security (DHS) then issued a notice to appear, charging Petitioner with removability from the United States under Section 237(a)(2)(B)(i) of the Immigration and Nationality Act (INA). (Dkt. 6-1 at 2.) On December 7, 2009, an immigration judge ordered Mr. K removed from the United States. (Dkt. 6-2.) The removal order authorized his deportation to Thailand or, in the alternative, Laos. (*Id.*) Mr. K and DHS waived appeal. (*Id.*) Mr. K then served around 90 days in immigration custody, after which Immigration and Customs Enforcement (ICE) released him on an order of supervision (OSUP) on March 8, 2010. (Dkt. 1 ¶ 26; *see also* Dkt. 6-6 at 3.) He has been under an OSUP since. (Dkt. 1 ¶ 26.)

In 2010, Petitioner was convicted of a being a felon in possession of a firearm and sentenced to a 60-month prison term. (Dkt. 1 ¶ 25.) In 2015, Mr. K was again convicted of a serious felony—first-degree aggravated robbery—and sentenced to 132 months in prison. (*Id.*) In October 2022, ICE became aware that Petitioner was in the custody of the Nobles County Sheriff's Office on a warrant for once again unlawfully possessing a firearm and lodged an Immigration Detainer for Petitioner. (Dkt. 6 ¶ 14.) In August 2023, Mr. K was convicted of being a felon in possession of a firearm and sentenced to 60 months in prison.

(*Id.* ¶ 15.) And in October 2023, he was sentenced to 24 months in prison for a conviction of fifth-degree felony possession of marijuana.[1] (*Id.* ¶ 16.)

On April 10, 2026, while Mr. K was serving his August 2023 felon-in-possession sentence at the Minnesota Correction Facility in Faribault (MCF-Faribault), ICE revoked Petitioner's OSUP. (*See id.* ¶ 5; Dkt. 6-3 at 2.) The Notice of Revocation of Release stated that his release was being revoked under 8 C.F.R. § 241.13(i) due to the felon-in-possession conviction from August 2023. (Dkt. 6-3 at 1.) The notice also indicated that "ICE [was] seeking a travel document to effect [Mr. K's] expeditious removal to Laos." (*Id.* at 2.) Further, the notice advised that Mr. K would "be afforded an informal interview at which [he would] be given an opportunity to respond to the reasons for this revocation" on April 13, 2026, and that he could provide any evidence or information he wanted reviewed in support of his release. (*Id.*)

On April 13, 2026, the day Mr. K was scheduled to be released from prison, the Minnesota Department of Corrections (MNDOC) released him to ICE custody pursuant to an Immigration Detainer. (Dkt. 6 ¶ 18.) ICE agents met Mr. K in the MCF-Faribault lobby and presented an administrative warrant for his arrest. (Dkt. 1 ¶ 5.) Mr. K alleges that the

---

[1] In his petition, Mr. K candidly includes a more comprehensive list of his misdemeanor and felony convictions than those discussed here. (Dkt. 1 ¶ 25.)

3

ICE agents did not provide him any paperwork indicating that his OSUP had been revoked.[2]

(*Id.* ¶¶ 5, 29.) That same day, ICE agents transported Mr. K from MCF-Faribault to the Whipple Federal Building in Fort Snelling. (*Id.* ¶ 6.) Notes from Mr. K's "informal interview" indicate that he did not provide a written or oral statement or any documents. (*See* Dkt. 6-4.) Later that day, ICE agents transported Mr. K from Fort Snelling to the Kandiyohi County Jail. (Dkt. 1 ¶ 6.)

DO Robinson attests that the Respondents are making progress to effectuate Mr. K's removal from the United States:

> On April 16, 2026, ERO St. Paul submitted a travel document request to ERO HQ. The request is pending as of [April 17, 2026], although based on my experience the request should be approved soon. For example, a recent request for travel documents to effectuate a removal to Laos was submitted on December 11, 2025, and the travel document was issued on January 27, 2026. Because of this, there is a Significant Likelihood of Removal in the Reasonably Foreseeable Future (SLRRFF) in [Mr. K's] case.

(Dkt. 6 ¶ 19.) In a supplemental declaration submitted by Respondents, DO Robinson further claims that on May 18, 2026, "the Lao People's Democratic Republic issued a travel

---

[2] Deportation Officer William Robinson (DO Robinson) attests that when MNDOC released Petitioner to ICE custody, "Deportation Officers placed [him] under administrative arrest . . . and served him the Notice of Revocation of Release." (Dkt. 6 ¶ 18.) To the extent this assertion implies that ICE agents served the Notice of Revocation on Mr. K before taking him into custody, the record contradicts that conclusion for two reasons. First, the documentary evidence indicates the notice was served on Mr. K at Fort Snelling, after ICE agents had taken him into custody at MCF-Faribault and transferred him there. (*See* Dkt. 6-3 at 2 (stating that the notice was served at "ICE-ERO Ft. Snelling").) Second, in their supplemental response, Respondents acknowledge that ICE agents served the notice on Mr. K "during processing at Fort Snelling." (Dkt. 9 at 3–4.)

4

document for Petitioner. Petitioner was manifested on a charter flight at the beginning of June[.]"[3] (Dkt. 10 ¶ 8.) However, Mr. K was removed from the flight because of the temporary restraining order entered in this litigation. (*Id.*) Mr. K remains detained at the Kandiyohi County Jail pending his removal from the United States to Laos. (*Id.* ¶ 9.)

On April 15, 2026, Mr. K filed a habeas petition asking the Court to order Respondents to release him from custody immediately. (Dkt. 1.) He divides his claims into five separate counts, two of which are substantively identical. In Count One, he claims that he is detained in violation of 8 U.S.C. § 1231 because Respondents are not holding him for the purpose of executing his final order of removal, and his removal is not likely to occur in the reasonably foreseeable future. (Dkt. 1 ¶¶ 47–50.) In Count Two, he claims that his detention violates his substantive-due-process rights under the Fifth Amendment because it is arbitrary and unreasonable. (*Id.* ¶¶ 51–53.) In Counts Three and Five, Mr. K claims that Respondents violated the *Accardi*[4] doctrine and deprived him of his procedural-due-process rights under the Fifth Amendment because the immigration officers failed to follow DHS and ICE's own regulations when arresting him. (*Id.* ¶¶ 54–59, 64–66.) In Count Four, he alleges that his arrest violates the Fourth Amendment because he was seized without his consent or a judicial warrant. (*Id.* ¶¶ 60–63.)

---

[3] Respondents did not file a copy of the travel document in the record.

[4] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

**DISCUSSION**

A writ of habeas corpus may be granted to any person who shows that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The right to challenge the legality of a person's confinement through a habeas petition "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020). The petitioner has the burden to prove that his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

I. **Counts Three and Five – Regulatory Noncompliance**

Start with Mr. K's claim that ICE failed to follow its own regulation when it revoked his OSUP and its agents took him into custody.[5] Specifically, he invokes a regulation requiring immigration officials to serve the Notice of Revocation on him before he was taken into federal custody. He argues that he did not receive the notice before he was arrested, so his detention is unlawful, and he must be released. The Court disagrees. Because Mr. K received the notice required by the regulations, he is not entitled to release.

Federal agencies are required to follow their own regulations. *See Accardi*, 347 U.S. at 268; *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025). Relevant here, a regulation provides that when a noncitizen is subject to a final order of removal, "but

_____

[5] After Respondents filed their response to the petition, the Court directed Respondents to file a supplemental response addressing Petitioner's regulatory-noncompliance claims. (Dkt. 8.) Respondents filed their supplemental response on May 27, 2026, and the Court gave Petitioner leave to file a supplemental reply, which he submitted on June 5, 2026. (Dkt. 9 (Supplemental Response); Dkt. 13 (Reply).)

ICE determines that 'there is no likelihood that the alien will be removed in the reasonably foreseeable future,' . . . ICE may not detain the individual indefinitely[.]" *Faisal Y v. Mullin*, No. 26-cv-2521 (LMP/ECW), 2026 WL 1557136, at *2 (D. Minn. June 2, 2026) (quoting 8 C.F.R. 241.13(g)(1)). "Instead, the regulations require ICE to 'promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions,' typically in the form of an OSUP." *Id.* (quoting 8 C.F.R. § 241.13(g)(1)) (alteration in original); *see also* 8 C.F.R. § 241.13(h)(1) (requiring the release to "be upon appropriate conditions" and discussing the mandatory conditions for an OSUP). That is what happened here when Mr. K was released on an OSUP in March 2010.

The same regulation provides that the noncitizen's release can be revoked in certain circumstances. As relevant here, a noncitizen released on an OSUP "may be returned to custody" if he "violates any of the conditions of release." 8 C.F.R. § 241.13(i)(1).[6] "Upon revocation, the alien will be notified of the reasons for revocation of his or her release," and ICE must promptly conduct an "initial informal interview" where the noncitizen can contest the decision to revoke the OSUP.[7] *Id.* § 241.13(i)(3). "The procedures set forth in 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process

---

[6] The other instance where revocation of an OSUP is appropriate is when circumstances have changed such that the immigration authorities have a basis to believe that there is a "significant likelihood" that they can remove the person in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2). That rationale would apply here as well, but Respondents did not rely on it in the revocation of Mr. K's OSUP.

[7] Mr. K does not claim that Respondents violated the regulation by failing to state the reasons why his OSUP was revoked. And the record reflects that the Notice of Revocation of Release explains why Petitioner's OSUP was revoked—his felon-in-possession conviction from 2023. (Dkt. 6-3 at 1.)

7

protections that courts have found to be constitutionally required." *Bulle v. Wesling*, No. 26-cv-19 (JJM/AEM), 2026 WL 183840, at \*2 (D.R.I. Jan. 23, 2026). Failure to comply with this regulation provides a basis for issuing a writ of habeas corpus. *See, e.g.*, *Sarail A.*, 803 F. Supp. 3d at 785 (granting habeas petition based on determination that immigration authorities failed to comply with several requirements of 8 C.F.R. § 241.13(i)(3)).

But here, the record does not support Mr. K's claim that Respondents deviated from the required revocation procedures. First, the regulation states only that "*upon revocation*, the alien will be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3) (emphasis added). Contrary to Mr. K's assertion, it does not necessarily require ICE to serve the notice upon the noncitizen *before* taking him into custody. <u>*See id.*</u> There is no dispute that the immigration officials notified Mr. K of the reasons for revocation of his release on the same day that he was taken into federal custody, indeed promptly after doing so.[8] This was sufficient to satisfy the regulation's requirement that the noncitizen receive notice of reasons for revocation. *See Faisal Y.*, 2026 WL 1557136, at \*3 (finding no violation of the regulation where immigration authorities provided the petitioner with the notice of revocation of his OSUP 23 minutes after taking him into custody); *Somvang P. v. Sec'y, Dep't of Homeland Sec.*, No. 26-CV-37 (PJS/EMB), 2026 WL 788853, at \*2 (D. Minn. Mar. 20, 2026) ("Somvang received notice the same date as

---

[8] It appears that Mr. K was picked up at a state prison, driven less than an hour, and given the notice while being processed into ICE custody. As long as the notice was issued prior to the arrest, this practice seems reasonable, and is akin to booking in criminal cases.

his arrest, so ICE seems to have complied with § 241.13(i)(3)'s requirement that notice be given 'upon revocation.'").

Second, nothing in the record suggests that Mr. K was deprived of an opportunity to contest the revocation, which is the purpose of the procedures set forth in § 241.13. *Claudio A.A. v. Bondi*, No. 26-cv-742 (KMM/LIB), 2025 WL 468232, at *4 (D. Minn. Feb. 12, 2026) (finding that § 241.13's procedures are intended to provide noncitizens with fundamental due process protections), *R&R adopted* 2026 WL 478347 (D. Minn. Feb. 18, 2026). Due process guarantees "the opportunity to be heard at a meaningful time and in a meaningful manner," but that "constitutional guarantee is flexible . . . and varies with the particular situation." *Wooten v. Pleasant Hope R-VI Sch. Dist.*, 270 F.3d 549, 551 (8th Cir. 2001) (cleaned up). Here, although ICE agents did not provide Mr. K with the Notice of Revocation until after they made the hour-long trip from MCF-Faribault to the Whipple Building, he then promptly received an informal interview at which he had the opportunity to contest the revocation of his OSUP. Moreover, the record undermines any suggestion that Mr. K was deprived of notice that ICE intended to take him back into federal custody once his state prison sentence expired. Indeed, the fact that ICE had lodged an immigration detainer with the MNDOC days prior to his release made clear the government's plan to take Mr. K into custody at the conclusion of his prison term.

Accordingly, the Court finds Mr. K is not entitled to habeas relief based on the claim asserted in Counts Three and Four of his petition.

9

## II.   Counts One and Two – 8 U.S.C. § 1231 and Substantive Due Process

Next, Mr. K alleges that his detention is arbitrary, unreasonable, and thus unlawful because it is not connected to the legitimate goal of effecting his removal. He claims that such a purposeless detention violates 8 U.S.C. § 1231 and his Fifth Amendment right to substantive due process of law. (Dkt. 1 ¶¶ 47–53.) The Court disagrees.

The record makes clear that Mr. K's detention is directly tied to ICE's efforts to remove him from the United States pursuant to the final order of removal issued on December 7, 2009. Prior to his arrest, ICE was aware that removals to Laos were being conducted. And in April 2026, ICE officers requested a travel document for Mr. K shortly after taking him into custody. (Dkt. 6-3 at 2.) The following month, ICE obtained a travel document from Laos to authorize his deportation. (Dkt. 10 ¶ 8.) Then, in early June, ICE scheduled him on a charter flight for repatriation to Laos, although he was eventually removed from the flight.[9] (*Id.*) Under these circumstances, nothing about Petitioner's detention appears to be arbitrary or otherwise disconnected from the purposes for which detention is authorized under § 1231. Therefore, Mr. K is not entitled to relief on the claims in Counts One and Two of the petition.

---

[9] In their supplemental response, Respondents assert that Mr. K "was removed from the scheduled charter solely because of the TRO currently in effect in this matter." (Dkt. 9 at 5.) Insofar as Respondents are referring to a provision in the Court's Order to Show Cause, which prohibits them "from transferring Petitioner to another district without at least 24 hours prior notice to the Court and opposing counsel so that Petitioner remains able to communicate with his attorney[,]" they misconstrue the Court's Order. Requiring Respondents to provide advance notice before moving Petitioner to another district is not a prohibition on effectuating his removal. (Dkt. 3.)

That said, if federal immigration authorities are ultimately unable to remove Mr. K to Laos, and they continue to detain him absent a likelihood that he can be deported in the reasonably foreseeable future, nothing in this Order shall be construed as preventing Mr. K from raising a future claim that potentially indefinite detention under § 1231 is unconstitutional. *See Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001) (explaining that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute").[10]

### III.    Count Four – Fourth Amendment

Finally, Mr. K claims that he is in custody in violation of his Fourth-Amendment rights because "Respondents did not have [his] consent or a judicial warrant to arrest him." (Dkt. 1 ¶ 63.) The Eighth Circuit has held that "the Fourth Amendment applies to arrests of illegal aliens[.]" *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). But *Quintana* equates the term "reason to believe" in 8 U.S.C. § 1357(a)(2) with "constitutionally required probable cause" in the context of *warrantless* arrests of noncitizens. *Id.* ICE agents arrested Mr. K on an administrative warrant, and *Quintana* does not suggest that is a Fourth Amendment violation. Therefore, the Court declines to grant a writ of habeas corpus on this basis.

**ORDER**

---

[10] Federal regulations provide that a noncitizen whose OSUP has been revoked because he violated his conditions of release "may be continued in detention for an additional six months in order to effect the alien's removal, if possible[.]" 8 C.F.R. § 241.13(i)(1). Because Mr. K was detained in April 2026, that six-month period has not yet expired.

For the reasons stated above, **IT IS HEREBY ORDERED THAT**:

1.  Nammoun K.'s Petition for a Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2.  This action is **DISMISSED**.

**Let Judgment be entered accordingly.**

Date:  July 8, 2026                              *s/Katherine Menendez*
                                                          Katherine Menendez
                                                          United States District Judge